Informal Opinion No. 2011-7 Beatrice Havranek County Attorney County of Ulster 240 Fair Street P.O. Box 1800 Kingston, New York 12402
Dear Ms. Havranek:
You have requested an opinion regarding whether the County can sell property that it acquired pursuant to state legislation that enables certain counties to purchase homes that have been subject to one or more incidents of flooding since April 1, 2004. More specifically, you have asked whether by filing certain documents in connection with participating in the program the County has dedicated the property as public parkland, with the result that the Legislature must specifically authorize its alienation. As explained below, we are of the opinion that the property has not been dedicated as public parkland, and thus that the common law prohibition against alienating public parkland without express authority from the Legislature does not prevent the County from selling such property.
In the 2008 budget, the Legislature created the "Greater Catskills Flood Remediation Program," ("Program"), pursuant to which the New York State Housing Trust Fund Corporation (HTFC) was authorized to provide funds to certain counties in which residents had suffered from flooding that caused substantial damage to their homes. Act of Apr. 23, 2008, ch. 57, Part NN, § 3, 2008 N.Y. Laws 2704, 2773. The purpose of the Program was to allow the counties to purchase qualified homes from the owners and demolish the homes.[1]Id. In order to receive funds from the HTFC for such a purchase, a county was required to provide assurances that the house would be condemned and "the property will be dedicated and maintained in perpetuity for a use that is compatible with open space, recreational, flood mitigation or wetlands management practices." Id. *Page 2 
You have advised that the County participated in the Program, and through the program the County purchased nine properties. The County received funds from the Program and demolished the existing structures on the properties. You have advised that the County's intent always has been to dispose of the properties. Your concern, however, is that the language of the assurances required for participation in the program may have had the effect of dedicating the purchased property to public park use. To meet the County's obligation to provide assurances that the properties would perpetually remain limited in use, the deeds by which the properties were conveyed from the original owners to the County provided that each property "shall be restricted to, dedicated to, and maintained in perpetuity for use that is compatible with open space, recreation, flood mitigation and/or wetlands management preservation." This language tracks the language of the statute establishing the Program.[2]
Property dedicated to certain types of public use, including public parkland, is subject to New York's longstanding common law public trust doctrine. Under this doctrine, such property, held by the government in trust for the public, may be alienated or its use changed only if legislatively authorized.Williams v. Gallatin, 229 N.Y.248 (1920); Brooklyn ParkCom'rs v. Armstrong, 45 N.Y. 234 (1871). Thus, if the statutory language establishing the Program had the effect of dedicating the land to public park use, specific approval by the State Legislature would be necessary for the County to sell it. Friends of VanCortlandt Park v. City of New York, 95 N.Y.2d 623, 630 (2001). We previously have explained that "[l]and can become dedicated to park or recreational purposes through specific provision in the deed, trust, will or other instrument transferring the land to a municipality." Op. Att'y Gen. (Inf.) No. 84-42. Land may also be dedicated to public park purposes by an offer from an owner to appropriate land to such purposes and an acceptance of such offer by the public, by formal dedication by a municipality, or by long use as a public park, id., but whether dedication by these means occurred is not in question in the instant circumstances.
We are of the opinion that the quoted language in the deeds did not have the effect of dedicating the purchased land to public parkland or other public use. Because the language came from the statute establishing the Program, we must interpret the statute itself. First and most important, the uses described by the language of the statute and of the assurance do not specifically require use as "parkland" or for park purposes. The Legislature has used such explicit language when dedication as public parkland is the only permissible use for acquired *Page 3 
property. See, e.g., Act of May 18, 2010, ch. 86, § 4, 2010 McKinney's N.Y. Laws 580, 581 ("the county of Putnam, acting through its county legislature, shall dedicate replacement lands for use as parkland for public park purposes").
Instead, the statute and the assurance limit the use of the property to those compatible with "open space, recreation, flood mitigation, or wetlands management practices." While use as public parkland can be consistent with some or all of these uses, private ownership and control of real property also can be consistent with them. For example, the Legislature has recognized that one advantage to restricting development of privately-owned farm land is preservation of open space. See, e.g., Agriculture Markets Law § 300 (legislative intent for establishing agricultural districts); id. § 327 (legislative intent for establishing farmland viability program). As another example, the Department of Environmental Conservation is authorized to enter into cooperative agreements with private landowners for the purpose of preserving and maintaining freshwater wetlands. Environmental Conservation Law § 24-0901(2). Thus, we believe that the Legislature did not intend to require dedication to a public use simply by requiring that land purchased with Program funds be used in a manner consistent with practices in one of these areas.
Additionally, when the Legislature has intended to prohibit or restrict the alienation of property acquired with particular funds, it has included an express prohibition in the statute establishing the funding program. See, e.g., Environmental Conservation Law § 51-0713 (wetlands acquired or restored with state moneys pursuant to the Environmental Quality Bond Act of 1972 "shall not be sold, leased or otherwise disposed of or used for any purpose inconsistent with the character or value of such wetlands"); Parks, Recreation Historic Preservation Law § 15.09 (lands acquired with moneys from sale of bonds authorized by Park and Recreation Acquisition Bond Acts cannot be disposed of or used for other than public park purposes without express authority of act of Legislature). No such prohibition is contained in the statute creating the program at issue here, providing further support for the view that statutory language was not intended to create a dedication to public parkland and the resulting restriction on alienation.
The use of "dedicated" in the mandated assurance does connote commitment of real property to a public purpose, seeAmerican Heritage Dictionary of the English Language
474 (4th ed. 2000) ("dedicate" can mean to open to public use). In light of the remainder of the language in the statute establishing the Program, however, we believe that its use in the assurance is more sensibly read as synonymous with "devoted",id. ("dedicated" can mean "wholly committed to a particular course of thought or action; devoted"), or, as the County provided in the *Page 4 
deeds from the owners to the County, "restricted to" uses compatible with the statutorily-stated practices.
We therefore are of the opinion that the County did not dedicate the purchased property such that it is rendered inalienable simply by making the assurance required to participate in the Program.
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD Assistant Solicitor General in Charge of Opinions
[1] "Demolish" was added by Act of July 7, 2008, ch. 284, 2008 N.Y. Laws 3328, 3329.
[2] The County added "restricted to," but because, as we explain, the use to which the property is "dedicated" and "restricted" is not limited to park use, the additional term does not affect the analysis here. *Page 1